RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3678-15T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

R.R.,

 Defendant-Appellant.
_________________________________

IN THE MATTER OF THE GUARDIANSHIP
OF K.F.R.,

 Minor.
_________________________________

 Submitted September 14, 2017 – Decided October 12, 2017

 Before Judges Simonelli and Rothstadt.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Cape May
 County, Docket No. FG-05-0024-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Theodore J. Baker, Designated
 Counsel, on the brief).
 Christopher S. Porrino, Attorney General,
 attorney for respondent (Melissa D. Schaffer,
 Assistant Attorney General, of counsel;
 Jennifer Russo-Belles, Deputy Attorney
 General, on the brief).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor (Margot E.K.
 Hirsch, Designated Counsel, on the brief).

PER CURIAM

 Defendant R.R.,1 the biological father of K.F.R. (Ken), born

in 2009, appeals from the April 18, 2016 Family Part judgment for

guardianship, which terminated his parental rights to the child.

The judgment also terminated the parental rights of the child's

biological mother, L.D. (Linda), who was deported to the Republic

of Palau (Palau) in 2015, and does not appeal.2 On appeal,

defendant contends the trial judge erred in finding respondent New

Jersey Division of Child Protection and Permanency (Division)

proved prong three of N.J.S.A. 30:4C-15.1(a) by clear and

convincing evidence. Defendant also argues the judgment should

be reversed because Linda was not represented by counsel in the

guardianship proceeding. For the following reasons, we affirm.

1
 Pursuant to Rule 1:38-3(d), we use initials and fictitious names
to protect the confidentiality of the participants in these
proceedings.
2
 The judgment of guardianship also terminated Linda's parental
rights to her son and Ken's half-sibling, D.P. (Dan), as well as
the parental rights of Dan's biological father, P.R. Dan and D.P.
are not involved in this appeal.

 2 A-3678-15T2
 We will not recite in detail the history of the Division's

involvement with defendant and Linda. Instead, we incorporate by

reference the factual findings set forth in Judge John R. Rauh's

April 18, 2016 oral opinion. However, we add the following

comments.

 Defendant has an extensive criminal history. Following his

arrest on drug and weapons charges in April 2014, the Division

effected a Dodd3 removal of Ken and Dan, filed an amended complaint

for custody, and placed the children with a non-relative caretaker.

Thereafter, the Division evaluated numerous relatives that

defendant and Linda identified as placement options, but none were

willing or able to care for Ken.

 In June 2014, defendant was convicted of first-degree robbery

and third-degree bail jumping and sentenced to a fifteen-year term

of imprisonment with an eighty-five percent period of parole

ineligibility. That same month, defendant identified a friend,

S.R. (Sally),4 as a placement option. Sally stated she would care

3
 A "Dodd removal" refers to the emergency removal of a child
children from the home without a court order, pursuant to the Dodd
Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82.
The Act was authored by former Senate President Frank J. "Pat"
Dodd in 1974. N.J. Div. of Youth & Family Servs. v. N.S., 412
N.J. Super. 593, 609 n.2 (App. Div. 2010).
4
 Defendant uses the initials B.R. in his merits brief; however,
the record refers to S.R., and defendant's arguments support a
finding that he meant S.R.

 3 A-3678-15T2
for Ken and Dan, but the Division ruled her out as a caretaker

because she had no prior relationship with the children.

 In November 2015, the Division again contacted Sally, who

stated she was only willing to care for Ken. Sally also stated,

and defendant does not dispute, that she and defendant had a

falling out and he told her not to apply to become a caretaker for

the children. By that time, Ken had been with his resource family

for eighteen months, and expressed his desire to remain with them.

The Division's undisputed expert evidence present at the

guardianship trial confirmed that Ken had a strong attachment to

his resource parents, who want to adopt him, and would suffer

severe and enduring harm if removed from them.

 Judge Rauh determined the Division satisfied all four prongs

of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.

Regarding prong three, the judge found the Division made reasonable

efforts to provide services to defendant. The judge considered

alternatives to termination and found none, and found the Division

assessed and properly ruled out any alternatives. This appeal

followed.

 Our Supreme Court has established the standard of review in

parental termination cases:

 Our task as an appellate court is to determine
 whether the decision of the family court in
 terminating parental rights is supported by

 4 A-3678-15T2
 substantial and credible evidence on the
 record. We accord deference to factfindings
 of the family court because it has the
 superior ability to gauge the credibility of
 the witnesses who testify before it and
 because it possesses special expertise in
 matters related to the family. . . . We will
 not overturn a family court's factfindings
 unless they are so wide of the mark that our
 intervention is necessary to correct an
 injustice. It is not our place to second-
 guess or substitute our judgment for that of
 the family court, provided that the record
 contains substantial and credible evidence to
 support the decision to terminate parental
 rights.

 [N.J. Div. of Youth & Family Servs. v. F.M.,
 211 N.J. 420, 448-49 (2012) (citations
 omitted).]

 A court should terminate parental rights when the Division

shows by clear and convincing evidence that:

 (1) The child's safety, health, or
 development has been or will continue to be
 endangered by the parental relationship;

 (2) The parent is unwilling or unable to
 eliminate the harm facing the child or is
 unable or unwilling to provide a safe and
 stable home for the child and the delay of
 permanent placement will add to the harm.
 Such harm may include evidence that separating
 the child from his resource family parents
 would cause serious and enduring emotional or
 psychological harm to the child;

 (3) The [D]ivision has made reasonable
 efforts to provide services to help the parent
 correct the circumstances which led to the
 child's placement outside the home and the
 court has considered alternatives to
 termination of parental rights; and

 5 A-3678-15T2
 (4) Termination of parental rights will not
 do more harm than good.

 [N.J.S.A. 30:4C-15.1(a).]

 As part of the third prong inquiry, the court must consider

whether the Division acted reasonably in assessing alternative

placement options. N.J. Div. of Youth & Family Servs. v. A.G.,

344 N.J. Super. 418, 434-35 (App. Div. 2001), certif. denied, 171

N.J. 44 (2002). "The reasonableness of the Division's efforts

depends on the facts in each case." Id. at 435. Under the fourth

prong, "[t]he question ultimately is not whether a biological

mother or father is a worthy parent, but whether a child's interest

will best be served by completely terminating the child's

relationship with that parent." N.J. Div. of Youth & Family Servs.

v. E.P., 196 N.J. 88, 108 (2008).

 Defendant does not address prongs one, two, four, or the part

of prong three requiring the Division to make reasonable efforts

to provide services to him. The issues, therefore, are deemed

waived. N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J.

Super. 501, 505-06 n.2 (App. Div.), certif. denied, 222 N.J. 17

(2015); Pressler & Verniero, Current N.J. Court Rules, comment 5

on R. 2:6-2 (2018).

 Defendant only challenges the part of prong three of N.J.S.A.

30:4C-15.1(a), which requires the court to consider alternatives

 6 A-3678-15T2
to placement. He argues the Division violated N.J.S.A. 30:4C-12.1

by not assessing Sally and not giving her the required notices,

including her right to seek administrative review of the rule out

decision. Defendant also argues the Division did not assess the

maternal grandmother, who resides in Palau, and Dan's paternal

uncle, who resides in Illinois. We disagree with defendant's

arguments.

 The Division has a statutory obligation to "search for

relatives who may be willing and able to provide the care and

support required by the child." N.J.S.A. 30:4C-12.1(a); N.J. Div.

of Child Prot. and Permanency v. K.N., 435 N.J. Super. 16, 29

(App. Div. 2014), aff'd as modified, 223 N.J. 530 (2015). There

is, however, no presumption in favor of placement with relatives

or friends. N.J. Div. of Youth & Family Servs. v. K.L.W., 419

N.J. Super. 568, 578 (App. Div. 2011). The presumption of

custodial placement only exists between a child and his biological

parents, not a proposed placement with family or a friend. N.J.

Div. of Youth & Family Servs. v. J.S., 433 N.J. Super. 69, 82

(App. Div. 2013), certif. denied, 217 N.J. 587 (2014).

 "Delay of permanency or reversal of termination based on the

Division's noncompliance with its statutory obligations is

warranted only when it is in the best interests of the child."

Ibid. (citations omitted). N.J.S.A. 30:4C-12.1(c) and N.J.A.C.

 7 A-3678-15T2
10:120A-3.1 permit the Division to rule out alternative placement

options based upon considerations of a child's best interests,

regardless of the person's willingness or ability to care for the

child. Id. at 75 (upholding the Division's rule-out authority

based on a person's unwillingness or inability to care for the

child, as well the child's interest). N.J.A.C. 10:120A-3.1(b)

prohibits a person who the Division has ruled out on best-interests

grounds from pursuing an administrative appeal of that agency

determination. Id. at 83-84.

 Here, the Division properly ruled out Sally based on Ken's

best interests. Sally was a stranger to Ken, and the record does

not reveal she expressed an interest in adopting him. Thus,

placing Ken with her would have been akin to kinship legal

guardianship, which is not appropriate where, such as here,

adoption is feasible and likely. See N.J. Div. of Youth & Family

Servs. v. P.P., 180 N.J. 494, 509 (2004). More importantly, the

undisputed expert evidence confirmed that Ken had a strong

attachment to his resource parents and would suffer severe and

enduring harm if removed from them.

 The Division attempted to assess the maternal grandmother.

The Division submitted an international social services

application for placement of the children with her in Palau and

attempted to facilitate the process between social workers in New

 8 A-3678-15T2
Jersey. However, the Division had no authority over Palau's social

services agencies to expedite the process. Further, the maternal

grandmother would not have been an appropriate caretaker because

Linda was going to live with her after being deported. Ken could

not be placed in the same home as Linda, who was found to have

abused and neglected him and endangered his child's safety, health,

or development. Lastly, Dan's paternal uncle in Illinois only

presented himself as a caretaker for D.P., not Ken.

 We are satisfied the record amply supports the judge's

findings that the Division assessed and properly ruled out all

alternatives. The relatives the Division assessed were either

unwilling or unable to care for Ken, and his placement with Sally

would have been against his best interests.

 Defendant next argues that the judgment of guardianship

should be reversed because Linda was not represented during the

guardianship proceedings. We have considered this argument in

light of the record and applicable legal principles and conclude

it is without sufficient merit to warrant discussion in a written

opinion. R. 2:11-3(e)(1)(E). Defendant lacks standing to raise

this argument. Nevertheless, the fact that Linda did not have

counsel was of no consequence to the termination of defendant's

parental rights.

 Affirmed.

 9 A-3678-15T2